

**NUMBER 13-06-116-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**SAMUEL ESPINOZA,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

**On appeal from the 214th District Court of Nueces County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Yañez, Rodriguez, and Vela**
**Memorandum Opinion by Justice Yañez**

A jury convicted appellant, Samuel Espinoza, of solicitation to commit capital murder[1] and assessed his punishment at sixty years in prison. In three issues, appellant contends (1) the trial court erred in failing to make findings of fact and conclusions of law concerning the voluntariness of his confession; (2) he was denied effective assistance of

---

[1] *See* TEX. PENAL CODE ANN. §§ 15.03(a), (d)(1) (Vernon 2003), 19.03(a)(3) (Vernon Supp. 2007).

counsel; and (3) the trial court erred when it conducted a hearing on his motion for new trial without his presence. We affirm.

## Background

Because appellant does not challenge the sufficiency of the evidence supporting his conviction, only a brief recitation of the facts is necessary.[2] Arnoldo Campos, a confidential informant, testified that he met with appellant's girlfriend and co-defendant, Herminia ("Alicia") Ozuna,[3] and her father, Augustine Perez, to discuss a potential drug deal. Campos negotiated to purchase thirty kilos of cocaine from Ozuna. Ozuna arranged for Campos to meet appellant, who had "connections," to provide the cocaine for sale. Ozuna and appellant were acting as "brokers" for the drug deal. Campos testified that Ozuna and appellant's profit from the proposed drug sale would be about $20,000 to $25,000.

Campos testified that at a meeting with Ozuna and Perez, Ozuna told Campos that she wanted to find someone to kill her common-law husband, Federico Hernandez. Eventually, Campos tape-recorded one of his conversations with Ozuna, in which they discussed the drug deal and Ozuna's desire to have her husband killed. Campos testified that Ozuna said that appellant knew of her plan to have her husband killed. Campos told Ozuna it would cost about $5,000 to hire someone to kill her husband, and she agreed to pay that amount.

Campos met with Ozuna and appellant at a ranch to discuss the details of the drug

---

[2] *See* TEX. R. APP. P. 47.1.

[3] Appellant and Ozuna were charged in the same indictment with solicitation to commit capital murder. After trial began, Ozuna pleaded "guilty," and appellant's case was severed from Ozuna's. Ozuna appeals in appellate cause number 13-05-624-CR. Appellant pleaded "not guilty," and his case was tried to a jury. The record in 13-05-624-CR has been incorporated into this cause for purposes of appeal.

2

deal. Campos told Ozuna he had found a "hit man" to kill her husband. According to Campos, appellant did not act surprised by the murder-for-hire discussion, and when Campos asked him if he was "okay" with the plan, appellant said he was and "was just gonna do everything possible to help [Ozuna] out." Campos testified that Texas Ranger Roberto Garza was advising him as to how to set up a meeting between Ozuna and an undercover agent portraying a prospective "hit man." Pursuant to Garza's instructions, Campos called Ozuna and told her to meet the "hit man" at a specific room at a motel in Corpus Christi. Campos testified that based on his conversation with Ozuna and appellant, appellant "knew exactly what was gonna happen" in the murder-for-hire plan.

John Lubbock, a retired officer with the narcotics unit of the Texas Department of Public Safety, testified that he agreed to work undercover as the "hit man" hired by Ozuna. Lubbock met appellant and Ozuna at the Corpus Christi motel room. Garza and local law enforcement officers had arranged to videotape the meeting in the motel room. The videotape was shown to the jury.[4] Lubbock identified appellant as the person in the videotape with Ozuna. He testified that Ozuna gave him a picture of Hernandez (the intended victim), a note with Hernandez's address on it, and forty dollars as down payment for the murder. On cross-examination, Lubbock testified that during the meeting, appellant indicated that he wanted the victim killed with a pistol by holding his hand like a pistol and saying, "I want it done that way."[5]

---

[4] The record contains a transcript of the audio portion of the videotape. However, the various speakers are not identified. When the videotape was admitted, appellant's counsel stated that he "had a pretrial objection regarding the search warrant, et cetera. So we renew that objection." The trial court overruled the objection.

[5] The transcript reflects that someone (apparently Lubbock) said, "You want him shot and make it look like an accident. No problem."

3

Garza testified that he arranged to videotape the meeting and was in the adjacent hotel room during the meeting "ready to kick the door down" "in case something went wrong." A day or so later, Garza obtained warrants to arrest Ozuna and appellant. Garza read appellant his rights, witnessed his waiver of rights, and obtained appellant's written statement. Appellant's written statement was admitted at trial without objection.

The trial court conducted a pre-trial hearing to hear various motions filed by appellant.[6] After the trial court heard appellant's arguments regarding his "motion for hearing on competency," "motion for discovery and inspection," "motion for voir dire prior to expert giving his opinion," and "request for evidence of bad acts," appellant's counsel stated, "we have an absolute right to the hearing on the voluntariness of any statement by the Defendant." When asked if he was "talking about a motion to suppress the statement," counsel responded, "Well, Your Honor, actually, I was just trying to determine whether or not there were actually voluntary statements. I didn't file it as a motion to suppress. I guess we could term it that."[7] The trial court stated it would proceed on appellant's motion to suppress and that appellant's counsel would be "able to question [the officer who took appellant's statement] on the voluntariness of the statement."

---

[6] Appellant's counsel filed eight pre-trial motions on the same day: "Request for Evidence of Bad Acts and Request for Jury Charge," "Defendant's Objection to Jury Charge" (no jury had been chosen and no charge had been filed), "Motion for Voir Dire Prior to Expert Giving His Opinion," "Motion to Examine Prosecutor's Peremptory Strike List," "Motion to Suppress any Statement Made by the Defendant and/or for Hearing on the Voluntariness of any Statement made by the Defendant," "Request for Evidence of Organized Criminal Activity," "Motion for Discovery and Inspection," and "Objection to Sending Exhibits to the Jury Room."

[7] Appellant's motion to suppress urged only that appellant "has the absolute right to a hearing on the voluntariness of any statement made by the defendant regardless of how the [S]tate chooses to characterize the statement." The motion did not identify any statement by appellant as involuntary, nor did it assert that any statement *was* involuntary.

4

The State began by stating it would "assume the burden" and called Garza as a witness. Garza testified that he advised appellant of his rights and took his statement. Garza stated that there was no indication appellant was mentally impaired and that he was not coerced or threatened in any way. The State also presented the testimony of Edward Gonzalez, a Department of Public Safety narcotics officer. Gonzalez testified that he witnessed Garza's interview of appellant. According to Gonzalez, appellant understood English, was advised of his rights, and gave a voluntary statement. Appellant presented no witnesses. Appellant's counsel argued to the trial court that there was "some issue" as to whether appellant understood what occurred, that appellant was instructed to answer in English, and that he therefore would "ask the court to suppress this confession as being voluntary [sic] and in conformity [sic] with all *Miranda* warnings." The trial court denied appellant's motion to suppress.

### Failure to file Findings of Fact and Conclusions of Law as to Voluntariness

In his first issue, appellant contends the trial court erred in failing to file findings of fact and conclusions of law, as required by section 6 of article 38.22 of the code of criminal procedure,[8] as to the voluntariness of his written statement. The State responds that the

---

[8] *See* TEX. CODE CRIM. PROC. ANN. art. 36.22 § 6 (Vernon 2005). Section 6 provides, in pertinent part:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause.

*Id.*

trial court is required to file such findings "only where the appellant has raised some underlying challenge to the voluntariness of the confession," and that here, appellant has not done so. We agree.

When a question is raised as to the voluntariness of a statement of an accused, the trial court must hold a hearing outside the presence of the jury to determine if the accused made the statement freely and voluntarily.[9] The State bears the burden of proof to show that the statement was voluntary.[10] Written findings of fact and conclusions of law are only required when a defendant has raised the issue of the voluntariness of his statement.[11]

Here, the trial court held a hearing and provided appellant an opportunity to cross-examine the State's witnesses and present evidence regarding the voluntariness of appellant's written statement. During the hearing, neither appellant nor the State presented any evidence raising a fact issue on voluntariness. Appellant did not testify at the hearing and presented no witnesses or evidence. Ranger Garza and Officer Gonzalez testified that appellant was given *Miranda*[12] warnings before he was interviewed, that he waived his rights, was not given any promises, and was not coerced or threatened in any way. Appellant cross-examined the State's witnesses, but did not raise any question that either contradicted the officers' testimony or touched on the issue of voluntariness.[13] We

---

[9] *See id.*; *Jackson v. Denno*, 378 U.S. 368, 380 (1964).

[10] *Ashcraft v. State*, 934 S.W.2d 727, 737 (Tex. App.–Corpus Christi 1996, pet. ref'd).

[11] *See* TEX. CODE CRIM. PROC. ANN. art. 36.22 § 6.

[12] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[13] Appellant's counsel asked questions concerning the taking of appellant's statement. At one point, counsel asked Garza if he knew whether appellant could read. Garza stated that he had appellant read the first page of the voluntary statement aloud.

6

conclude appellant failed to present any evidence raising a fact issue as to the voluntariness of his written statement.[14] Accordingly, the trial court was not required to make written findings of fact and conclusions of law.[15]

To the extent appellant's counsel attempted to argue that there was "some issue" as to whether appellant understood what occurred, and whether he understood English sufficiently, we find his argument to be without merit.[16] Ranger Garza testified that he verified appellant's ability to read English by having him read a portion of the statement aloud. Officer Gonzalez testified that appellant seemed to understand English and did not appear to be under the influence of any narcotic drugs or alcohol during the interview.

We hold the trial court did not err in failing to make findings of fact and conclusions of law regarding the voluntariness of appellant's written statement. We overrule appellant's first issue.

## Ineffective Assistance

---

[14] In *Hartfield v. State*, 28 S.W.3d 69, 72 (Tex. App.–Texarkana 2000, pet. ref'd), the appellant challenged the admissibility of his written statement in which he admitted that he strangled his wife. *Id.* at 71. During trial, he obtained a hearing on his motion to suppress the statement. *Id.* at 72. At the hearing, the only ground he argued was that he had not had an opportunity to read his statement after it was prepared. *Id.* The court of appeals held that his claim did "not constitute a contention of involuntariness." The court also held that no findings of fact were required because the appellant did not challenge the voluntariness of his statement. *Id.*

[15] *See Lindley v. State*, 635 S.W.2d 541, 544-45 (Tex. Crim. App. 1982) (holding findings of fact and conclusions of law not required where appellant did not specifically raise issue of voluntariness of his statements, did not object to admissibility of statements on grounds that statements were involuntary, and did not present any evidence on issue of voluntariness); *Braddock v. State*, 5 S.W.3d 748, 754 (Tex. App.–Texarkana 1999, no pet.) (noting findings of fact and conclusions of law not required where appellant failed to object to admissibility of statement as involuntary and failed to present any evidence on the issue); *Mowbray v. State*, 788 S.W.2d 658, 663 (Tex. App.–Corpus Christi 1990, pet. ref'd) (holding absent evidence which raises an issue of voluntariness, no finding on voluntariness is required); *Miller v. State*, 666 S.W.2d 269, 273 (Tex. App.–Dallas 1984, pet. ref'd) (holding findings of fact and conclusions of law not required where there is no evidence creating a fact issue as to the voluntariness of the appellant's statements).

[16] *See Lindley*, 635 S.W.2d at 545 (noting officer's statement that appellant "seemed to appear not to be himself" was ambiguous and insufficient to establish that statements were not voluntary).

By his second issue, appellant contends he was denied effective assistance of counsel. Appellant claims his trial counsel was ineffective at the suppression hearing by failing to (1) have appellant testify and (2) call Raul R. Capitaine, M.D., P.A.,[17] concerning appellant's mental ability to comprehend his legal rights. Appellant contends his counsel was ineffective at the guilt-innocence stage of trial by failing to (1) have appellant testify on the issues of entrapment and "aid[ing] and abetting" Ozuna; (2) call Dr. Capitaine to testify concerning appellant's mental condition on the issues of the entrapment defense, the "aid and abetting" issue, and the insanity defense; (3) call any defense witnesses; and (4) present any defense. Appellant contends his counsel was ineffective at the punishment stage by failing to (1) have appellant testify and (2) have Dr. Capitaine testify on appellant's mental condition in mitigation of punishment.

*Strickland v. Washington*,[18] sets forth the standard of review for effectiveness of counsel.[19] *Strickland* requires a two-part inquiry.[20] The defendant must first show that counsel's performance was deficient, in that it fell below an objective standard of

---

[17] Dr. Raul R. Capitaine, a forensic psychiatrist, was appointed by the trial court to evaluate appellant for purposes of determining his competency to stand trial and whether he was insane at the time of the offense. Although Dr. Capitaine's report was not admitted at trial, it is included in the appellate record pursuant to appellant's bill of exceptions. *See* TEX. R. EVID. 103(a)(2). Appellant does not challenge the exclusion of the report on appeal. Dr. Capitaine found appellant was competent to stand trial, was not insane at the time of the offense, and that although appellant's intellectual functioning was "below average," he was not mentally retarded.

[18] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[19] *See Ex parte Ellis*, 233 S.W.3d 324, 339 (Tex. Crim. App. 2007); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[20] *Thompson*, 9 S.W.3d at 812.

reasonableness.[21]   Second, the defendant must further prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[22]   A reasonable probability is a probability sufficient to undermine confidence in the outcome.[23]

The determination regarding whether a defendant received effective assistance of counsel must be made according to the facts of each case.[24]   An appellate court looks to the totality of the representation and the particular circumstances of the case in evaluating counsel's effectiveness.[25]

The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective.[26]   There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[27]   To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."[28]

Generally, the record on direct appeal will be insufficient to show that counsel's

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 813.

[27] *Id.*

[28] *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

representation was so deficient as to meet the first part of the *Strickland* standard.[29] We will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy.[30] In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy.[31]

Here, appellant filed a motion for new trial, but did not raise the issue of ineffective assistance of counsel.[32] At the hearing on the motion for new trial, appellant complained that (1) the jury was prejudiced against appellant by the evidence regarding the drug deal, and (2) the indictment included Ozuna, but her "name was not read at either stage of the trial." Thus, no motion for new trial was filed on the issue of counsel's alleged ineffective assistance and the record is silent as to why counsel acted as he did.

Each alleged error is an error of omission. We cannot determine the reasons that counsel did not call appellant to testify (at any stage of the proceedings), did not call Dr.

---

[29] *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

[30] *See Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

[31] *Id.*

[32] We note that the motion for new trial was filed by appellant's trial counsel. As the Texas Court of Criminal Appeals has noted,

> In most cases, the record on direct appeal is "inadequate to develop an ineffective assistance claim" because "the very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim." [quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)]. Therefore, when an applicant files an application for a writ of habeas corpus, the record can be supplemented by the trial court gathering facts. This "provides an opportunity for a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at that juncture of trial." [quoting *Thompson v. State*, 9 S.W.3d 808, 814-15 (Tex. Crim. App. 1999)].

*Ex parte Varelas*, 45 S.W.3d 627, 629-30 (Tex. Crim. App. 2001).

Capitaine to testify (at any stage of the proceedings), or call any defense witnesses. When the record is silent, we may not speculate about why counsel acted as he did.[33] It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence."[34] "Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness."[35] Because there is no record to show trial counsel's reasons for acting or failing to act in the manner challenged, appellant has failed to establish that his counsel was ineffective.[36]

Moreover, appellant has failed to address or explain why the purported failures by trial counsel would have caused a different result. We conclude that appellant has not established the second prong of *Strickland* because he has failed to show in reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[37] We overrule appellant's second issue.

### Absence from Motion for New Trial Hearing

By his third issue, appellant complains that the trial court erred in holding a hearing on his motion for new trial in his absence. At the hearing, appellant's counsel explained

---

[33] *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Ozuna v. State*, 199 S.W.3d 601, 612 (Tex. App.–Corpus Christi 2006, no pet.). Similarly, when the appellate record is silent as to why trial counsel *fails* to take an action, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007).

[34] *Mata*, 226 S.W.3d at 430.

[35] *Id.*

[36] *See Jackson*, 877 S.W.2d at 771.

[37] *See Ellis*, 233 S.W.3d at 330; *Strickland*, 466 U.S. at 694.

11

that his attempt to secure appellant's presence by bench warrant had been unsuccessful.[38]
Appellant's counsel expressly stated that he wished to go forward without appellant and that he waived appellant's right to be present. Counsel also stated that even if appellant was present, he would not testify at the hearing.

A defendant may waive his right to be present at a hearing on his motion for new trial.[39] We conclude appellant waived his right to be present, and the trial court did not err in conducting the hearing without his presence.[40] We overrule appellant's third issue.

### Conclusion

We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Do not publish. Tex. R. App. P. 47.2(b).

Memorandum opinion delivered and filed
this the 22nd day of May, 2008.

---

[38] At the hearing on appellant's motion for new trial, the trial court asked the sheriff's office why appellant was not produced by the bench warrant. The court was advised that the bench warrant, which was prepared by appellant's counsel's office, was defective because it did not contain certain required information, including appellant's TDC number.

[39] *See Whitaker v. State*, 977 S.W.2d 869, 877 (Tex. App.–Beaumont 1998, pet. ref'd) (holding appellant's counsel waived appellant's right to be present at motion for new trial hearing where appellant was not bench warranted and counsel elected to proceed with hearing); *Coons v. State,* 758 S.W.2d 330, 339 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd); *Escarcega v. State*, 711 S.W.2d 400, 402 (Tex. App.–El Paso 1986), *pet. dism'd, improvidently granted*, 767 S.W.2d 806, 807 (Tex. Crim. App. 1989).

[40] *See Whitaker*, 977 S.W.2d at 877.